## SOLLERS ET AL. *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Trustee u/w of Albert Brown, ET AL.

[No. 482, September Term, 1970.]

*Decided June 25, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Wallace Dann,* with whom were *Bregel & Bregel, Chartered,* on the brief, for appellants.

*Nevin E. Leese* and *Irving L. Fishbein* for appellees Mildred Clark et al. No brief filed on behalf of appellee Mercantile-Safe Deposit and Trust Co., Trustee.

SINGLEY, J., delivered the opinion of the Court.

This case poses a narrow question: in making a stirpital distribution of the remainder of a testamentary trust among the decendants of the persons who had received the income for life, are the stirpes, or stocks, to be found among those who had the equitable life estates, or among the remaindermen, who are the first takers?

Albert Brown died domiciled in Baltimore in 1963. By the terms of his will, drawn in 1927, after making provision for his wife (who did not survive him) and his descendants (he had none) the residue of his estate was to be held by Safe Deposit and Trust Company, now Mercantile-Safe Deposit and Trust Company (the Mercantile), as trustee, subject to the limitation:

> "If, however, there are no descendants of mine surviving at the death of my said wife, the said Trustee shall continue to hold the said estate until the death of the last survivor of my brothers and sisters, and in the meantime it shall pay the net income therefrom equally to such of my brothers and sisters as shall be living from time to time as the income is payable, and upon the death of the last survivor of them, the said Trustee shall distribute the trust estate then in its hands absolutely to the then living descendants of my brothers and sisters, in such manner that the children and descendants of deceased children of each of my brothers and sisters shall receive, per stirpes, one equal share of the said estate."

Albert Brown had three brothers and three sisters, all of whom predeceased him except his brother Howard, who was the sole income beneficiary until his death in June of 1969. Some time thereafter, the Mercantile filed a bill in equity in the Circuit Court of Baltimore City seeking a construction of the will. After stating the

facts, the bill recited that the will was susceptible of two possible constructions. If the stirpes, for purposes of distribution, were to be found among the brothers and sisters of Albert Brown, the remainder would initially be divided into six parts, each of which would then be distributed in equal shares among the then living children of a deceased brother or sister, as the case might be, the child or children of any deceased nephew or niece taking the parent's share. Alternatively, if the stirpes were to be found among the children of the brothers and sisters, the remainder would be divided into 22 equal parts, one of which would be paid to each of the 20 living nephews and nieces, the remaining two parts being distributed to children of a deceased nephew, on the one hand, and the children of a deceased niece, on the other.

From a decree directing that the remainder interest initially be divided into six parts for purposes of distribution, the children of Mr. Brown's deceased sister, Laura Brown Garrish, and the descendants of her deceased child have appealed.

Until relatively recently, the Maryland decisions which identified the stocks for the purposes of stirpital distributions were neither as precise nor as consistent as one might have wished. The earlier cases found the stirpes among the first takers; the more recent ones, among the ancestors of those who took. A discussion of the decisions which underlay the resolution of the uncertainty may be found in *Patchell v. Groom* [185 Md. 10, 43 A. 2d 32 (1945)] *Revisited: Distributions Among Descendants Per Stirpes*", 15 Md.L.Rev. 1 (1955). The problem was settled as regards a gift over to the descendants of the testator or settlor by *Ballenger v. McMillan,* 205 Md. 94, 106 A. 2d 109 (1954) and any lurking possibility that the rule of *Ballenger* might be limited to a gift to one's own descendants was left in doubt by *Robinson v. Mercantile-Safe Deposit & Trust Co.,* 214 Md. 30, 132 A. 2d 841 (1957) and ultimately dispelled by *Cole v. Bailey,*

218 Md. 177, 146 A. 2d 14 (1958). Finally, the recent revision of our decedents' estates law has adopted the rule of the recent cases: that, in the absence of a clear expression of contrary intention, a direction that a distribution be made per stirpes will result, in the estates of persons dying after January 1, 1970, in the distribution which would have been ordained by the statute of distribution had the person representing the stock died intestate owning the subject of the gift, Code (1957, 1969 Repl. Vol.) Art. 93, § 1-210.

*Ballenger, Robinson* and *Cole*, all *supra*, brought Maryland squarely within the rubric of 3 *Restatement of Property, Future Interests*, § 303 (1) at 1655 (1940):

> "*When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of B,' and the membership in such class has been ascertained in accordance with the rules stated in §§ 292 and 294-299, then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift.*" (Emphasis supplied)

It is too late to argue that a gift, per stirpes, to the descendants of a group of individuals, whether the individuals be designated by name or identified as a class, in the absence of a clear expression of contrary intent, means anything other than that the descendants will take in the manner provided by the statute of descent and distribution in effect at the death of the testator, now Code, Art. 93, §§ 3-101 through 3-104, just as if the ancestor had died intestate, owning the subject of

the gift. The chancellor correctly construed the will, and the decree appealed from will be affirmed.

One final matter remains. Counsel for the appellants maintains that the cost of the proceeding, including a reasonable counsel fee, should be paid from the assets of the trust estate. Our practice is clearly to the contrary, Rules V 71 e and 205 e both as revised 2 February 1970. The costs of the proceeding, including the fee of the trustee's counsel may be so paid, but not the fees of counsel for other parties, unless they were appointed by the court to represent infants or persons under some disability, which was not the case here.

*Decree affirmed; costs, including a reasonable fee of counsel for the trustee, to be paid from the corpus of the trust estate.*